**THE QUINLAN LAW FIRM, LLC**
2415 E. Camelback Road, Suite 700
Phoenix, Arizona 85016
Tel: 602.732.6500

William J. Quinlan, State Bar No. 028679
Tel: 312.629.6012
E-Mail: wjq@quinlanfirm.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| POWERS STEEL & WIRE PRODUCTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMERISURE MUTUAL INSURANCE CO., <br><br> Defendant. | CASE NO. _____ <br><br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff, Powers Steel & Wire Products, Inc. ("Powers Steel" or the "Company"), by and through its counsel, respectfully submits this Complaint for monetary damages against Defendant Amerisure Mutual Insurance Company ("Amerisure" or "Defendant").

## INTRODUCTION

1.    This action arises from Amerisure's vexatious and unreasonable refusal to honor its contractual obligation to defend and indemnify Powers Steel against claims arising from a lawsuit filed against Powers Steel in Maricopa County Superior Court in the case of *Powers Steel & Wire Products, Inc. v. Walsh, et al.*, Case Number CV2018-001278 (the "*Walsh* Case").

2.    Plaintiff Powers Steel is a Phoenix-based steel fabricator and distributor and supplies various products to construction companies and end users. The Company is a family

business and has been owned, operated and managed by members of the Powers family for almost 50 years.

3.     Powers Steel purchased a general commercial liability insurance policy (the "Policy") from Amerisure, which was in effect from April 1, 2018 through April 1, 2019. Under the Policy, Amerisure agreed to "pay those sums that [Powers Steel] becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." Amerisure also agreed to defend Powers Steel against any lawsuit seeking such damages.

4.     On July 17, 2018, Powers Steel's former officer and director William Powers and his company Powers Reinforcing Fabricators, LLC (collectively "PRF") filed a Counterclaim in the *Walsh* Case, which was subsequently superseded by an Amended Counterclaim filed two days later on July 19, 2019, and which has remained the operative complaint since that time. In the Amended Counterclaim, PRF alleged causes of action against Powers Steel for tortious interference with business expectancies and defamation based on Powers Steel's three allegedly defamatory demand letters Powers Steel sent to PRF's customers and vendors, as well as a cause of action for trespass based on alleged unmanned aerial vehicle ("UAV") flights over PRF's place of business.

5.     Powers Steel timely and promptly notified Amerisure that PRF had filed a lawsuit against Powers Steel and properly requested defense and indemnification from Amerisure.

6.     Rather than honor its contractual obligations, however, after being made aware of the claims against Powers Steel, Amerisure delayed for months in responding to Powers Steel. When it did respond, it equivocated about its responsibilities with respect to certain claims against Powers Steel and denied responsibility for others. Ultimately, Amerisure declined to fully comply with its obligation to defend and indemnify Powers Steel.

7.     As a result of Amerisure's unreasonable and incorrect interpretation of the claims against Powers Steel in the *Walsh* Case, Powers Steel has been forced to bring this suit in order to obtain the defense and indemnification it is owed by Amerisure, for which it has

bargained and paid consideration.

## PARTIES, JURISDICTION, AND VENUE

8.     Plaintiff Powers Steel is an Arizona corporation, with its principal place of business in Phoenix, Arizona.

9.     Defendant Amerisure is a Michigan corporation, with its principal place of business in Farmington Hills, Michigan.

10.    The amount at issue in this case exceeds $75,000.

11.    This Court has jurisdiction over this case pursuant to 28 USC § 1332.

12.    Venue is proper because the events giving rise to this Complaint occurred in Maricopa County, Arizona.

## STATEMENT OF FACTS

*Powers Steel Contracts with Amerisure for Insurance.*

13.    In or around May 2018, Powers Steel, through Brown & Brown Insurance of Arizona, Inc. ("Brown & Brown") acting as its broker, purchased insurance coverage from Amerisure.

14.    Amerisure subsequently issued the Policy, with the effective dates April 30, 2018 to April 30, 2019. Among other insurance coverage, Amerisure issued Powers Steel Commercial General Liability Coverage.

15.    Under the Policy, Amerisure agreed to "pay those sums that the insured [Powers Steel] becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the Insured against any 'suit' seeking those damages." The Policy defines "personal and advertising injury" to include "Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services."

16.    The Policy defines "suit" as "a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged."

The Quinlan Law Firm™

Chicago  |  Phoenix  |  Silicon Valley

*Powers Steel is Sued For Causes of Action Covered by the Policy.*

17.    On February 8, 2018, Powers Steel filed its initial Complaint in the Maricopa County Superior Court in the *Walsh* Case against its shareholder and former officer and director William Powers and certain others, in which it alleged, among other things, a claim against William Powers for replevin.

18.    On May 25, 2018 Powers Steel filed an Amended Complaint in the *Walsh* Case which added additional claims against William Powers and the steel company he owned and operated, Powers Reinforcing Fabricators, LLC, for, among other things, breach of fiduciary duties that William Powers continued to owe Powers Steel as its shareholder.

19.    Subsequently, Powers Steel, through its attorneys, sent letters to three of PRF's customers and vendors (the "Demand Letters"), demanding that they stop aiding and abetting what Powers Steel believed was William Powers' breach of his fiduciary duties. These letters made unmistakably clear that they related to the ongoing litigation between Powers Steel and William Powers, and that Powers Steel was contemplating litigation against each recipient. The Demand Letters communicated Powers Steel's legal position that William Powers had breached his fiduciary duties.

20.    On July 17, 2018, PRF filed a Counterclaim against Powers Steel in the *Walsh* Case, which alleged that the Demand Letters constituted defamation and tortiously interfered with PRF's business expectancies. The factual allegations underlying both claims were essentially identical and arose from the sending of the Demand Letters.

21.    On July 19, 2018, PRF filed an Amended Counterclaim, which alleged a third cause of action against Powers Steel for trespass based on an allegation that Powers Steel's agents had caused a UAV to fly over PRF's place of business. The Amended Counterclaim alleged that Powers Steel's alleged trespass interfered with the peaceful enjoyment of its leased property by "causing a disturbance to PRF and its employees and a potentially dangerous scenario, endangering the health of PRF employees by distracting them from their duties."

22.    Each of the claims alleged in the Counterclaim and Amended Counterclaim were legally and factually baseless.

*Powers Steel Timely Informs Amerisure of the Claims Against it, but Amerisure Delays Responding and Fails to Fully Comply with its Obligations Under the Policy.*

23.    After receiving notice of the Amended Counterclaim, in or around July 2018, Powers Steel notified Amerisure of the claims against it in the *Walsh* Case.

24.    Subsequently, on or around October 30, 2018, Powers Steel contacted its insurance broker Brown & Brown regarding the claims against Powers Steel and provided Brown & Brown with a copy of the Amended Counterclaim. On or around November 6, 2018, Brown & Brown sent the Amended Counterclaim to Amerisure.

25.    Amerisure failed to respond to Powers Steel's notifications regarding the claims against it in the *Walsh* Case until on or around December 28, 2018. At that time Amerisure called Powers Steel's attorney and informed them that Amerisure was reviewing the Policy to determine if Powers Steel had coverage for the claims in the Amended Counterclaim.

26.    On or around February 7, 2019, Amerisure informed Powers Steel that Amerisure had reviewed the claims in the Amended Counterclaim, that the Policy would cover the defamation claim, and that Amerisure would be assisting in Powers Steel's defense of this claim.

27.    On or around March 25, 2019, Amerisure stated in an email to Powers Steel that the Policy "would likely cover the defamation-like claims against Powers Steel" and that "there is a possibility of coverage for the tortious interference claims brought against Powers Steel as well." Amerisure also requested that Powers Steel provide Amerisure with its costs to date and stated that "Amerisure would be 'helping out' with the defense of the claims brought against Powers Steel, however, we will need to come to agreement over what [the Policy] will cover."

28.    On or around April 4, 2019, Powers Steel sent Amerisure a letter in which it noted that, although Amerisure had agreed to provide coverage and a defense with respect to the defamation claim, Amerisure was obligated to provide Powers Steel with a defense and coverage as to all claims involved in the *Walsh* Case. Specifically, Powers Steel noted:

"In Arizona, 'if any claim alleged in the complaint is within the policy's coverage, the insurer has a duty to defend the *entire suit*, because it is impossible to determine the basis upon which the plaintiff will recover (if any) until the action is completed." (emphasis added.) *Lennar Corp. v. Auto-Owners Ins. Co*. 214 Ariz. 255, 261 (Ct. App. 2007) (quoting *W. Cas & Sur. Co. v. Int'l Spas of Arizona, Inc.*130 Ariz. 76, 79 (Ct. App. 1981).

29.     Along with this letter, Powers Steel also provided documentation capturing all of Powers Steel's attorney fees incurred in the *Walsh* Case between July 17, 2018 and January 31, 2019.

30.     On or around May 8, 2019, Amerisure informed Powers Steel, for the first time and contrary to Amerisure's previous statements, that Amerisure now believed that the defamation claim against Powers Steel might not be covered by the terms of the Policy because it purportedly involved material that was allegedly published with knowledge of its falsity. Amerisure, however, made clear that this conclusion was only a possibility and it was not formally declining or rejecting Powers Steel's claim under the Policy.

31.     On or around May 16, 2019, in an email, Amerisure again apparently changed its position and confirmed to Powers Steel that that Amerisure would defend Powers Steel against the allegations set forth in the counterclaims, but under a reservation of rights. Specifically, Amerisure's email stated: "Amerisure will defend Power Steel & Wire Products against the allegations of the counterclaim under an ROR which will be forthcoming. Amerisure will reimburse the reasonable attorney's fees and costs in defending the counterclaim." Amerisure stated that it would follow up regarding the details.

32.     On or around June 6, 2019, having not received the promised follow up from Amerisure, Powers Steel sent Amerisure a letter noting that, despite the fact that Powers Steel had promptly tendered a claim to Amerisure under the Policy in July 2018, Amerisure had failed to promptly undertake its duty to defend Powers Steel under the terms of the Policy, and had failed to act in good faith. Powers Steel also noted that Amerisure's conduct and lack of action had imposed significant costs and effectively deprived Powers Steel of the benefit of its bargain under the Policy. Powers Steel, therefore, stated that the letter constituted its formal written demand for the available policy limits under the Policy, noting that it

anticipated the policy limit of $1,000,000 would be expended by Powers Steel in its defense of the claims in the Amended Counterclaim.

33.    On or around June 7, 2019, Powers Steel received Amerisure's reservation of rights letter, which again agreed to defend Powers Steel regarding the counterclaims subject to a reservation of rights.

34.    In or around June and July, 2019 Powers Steel and Amerisure exchanged correspondence regarding: the date of Powers Steel's tender; the reasonable post-tender defense fees incurred by Powers Steel; the information Amerisure needed to determine those reasonable fees, and Amerisure's asserted right to appoint counsel to defend the counterclaims going forward.

35.    On or around August 29, 2019, Powers Steel received a letter from Amerisure stating that Amerisure would not cover the full costs of Powers Steel's defense in the *Walsh* Case. Specifically, Amerisure stated that the only cause of action in the Amended Complaint that it believed was covered by the Policy was the defamation claim and that it would limit its coverage to expenses incurred in the defense of that claim only. Further, Amerisure made clear that it would not cover the expenses Powers Steel had incurred during its entire defense of the defamation claim, but would instead pay only for attorneys' fees incurred by Powers Steel between November 6, and November 28, 2018, which Amerisure mistakenly stated was the date on which the defamation claim brought against Powers Steel had been dismissed.[1] Finally, Amerisure also objected to the billing rates charged by Powers Steel's attorneys and therefore, stated that it would pay for only half the total amount that the attorneys had billed between November 6, and November 28, 2018.

*Powers Steel Incurs Significant Attorneys' Fees Defending Itself Against the Claims in the* Walsh *Case.*

36.    While it was waiting for Amerisure to confirm that it would fully fulfill its contractual obligations under the policy, Powers Steel, through its attorneys, took numerous

---

[1] As noted below, the defamation claim was, in fact, dismissed by the court in the *Walsh* Case in a minute entry filed November 30, 2018.

7

actions in the *Walsh* Case to defend itself against the allegations in the Amended Counterclaim.

37.     Among these steps, Powers Steel moved to dismiss the defamation and tortious interference claims in the Amended Counterclaim. On November 30, 2018, the court in the *Walsh* Case granted this motion in part, dismissing the defamation claim, but permitting PRF to move forward with its claim for tortious interference.

38.     Since that time, Powers Steel has engaged in discovery and otherwise taken steps to defend itself with respect to the remaining claims asserted against it in the *Walsh* Case. Presently, discovery in the *Walsh* Case continues and no trial date has been set.

39.     As a result of the actions Powers Steel has been required to take to defend itself against the claims in the Amended Counterclaim, Powers Steel has incurred significant attorneys' fees.

40.     The hours and rates for these fees were reasonable given the character and complexity of the litigation, the attorneys' experience and other qualifications, and the locale of the legal services.

## COUNT I
## DECLARATORY JUDGMENT

41.     Plaintiff incorporates the allegations contained in Paragraphs 1 through 40 as if fully restated herein.

42.     Powers Steel is seeking a declaration of its rights under the Policy issued to Powers Steel by Amerisure.

43.     As demonstrated more fully above, an actual controversy exists between Powers Steel and Amerisure concerning the parties' respective rights and obligations under the Policy.

44.     Specifically, Powers Steel seeks a declaration from this Court that it is entitled to coverage, defense, and indemnification against any and all liabilities arising from the claims asserted against it by PRF in the *Walsh* Case, including reimbursement of defense costs such as are reasonable

The Quinlan Law Firm™

Chicago  |  Phoenix  |  Silicon Valley

## COUNT II
## BREACH OF CONTRACT

45.     Plaintiff incorporates the allegations contained in Paragraphs 1 through 44 as if fully restated herein.

46.     Powers Steel entered into a valid and enforceable agreement with Amerisure, namely the Policy.

47.     Powers Steel has fully performed its obligations under the Policy, including paying all premiums required pursuant to the Policy and promptly providing Amerisure with notice of all claims in the *Walsh* Case for which it sought coverage and indemnification.

48.     Pursuant to the Policy, Amerisure agreed to provide insurance coverage – that is, defense and indemnification – for all losses, including damages, settlements, and defense costs (attorneys' fees) incurred by Powers Steel for any "personal and advertising injury" allegedly caused by Powers Steel.

49.     At the very least, the claims for defamation and tortious interference asserted by PRF against Powers Steel in the *Walsh* Case constitute an occurrence of alleged "personal and advertising industry" under the Policy.

50.     Moreover, because these claims were within the Policy's coverage, Amerisure had a duty to defend Powers Steel against all claims in the *Walsh* Case because it is impossible to determine the basis upon which the PRF will recover (if any) until the action is completed.

51.     Although it accepted substantial premiums paid by Powers Steel under the Policy, Amerisure denied Powers Steel's request for full coverage, defense and indemnification, and refused to perform its obligations under the Policy.

52.     Amerisure's conduct in conjunction with Powers Steel's request for coverage denied Powers Steel of the benefits bargained for under the Policy and constitutes a breach of the terms of the Policy.

53.     As a result of Amerisure's breaches, Powers Steel has suffered damages greater than $75,000 in an amount to be proven at trial.

The Quinlan Law Firm™

Chicago   |   Phoenix   |   Silicon Valley

## COUNT III
### BAD FAITH

54.     Plaintiff incorporates the allegations contained in Paragraphs 1 through 54 as if fully restated herein.

55.     As set forth more fully above, Amerisure has denied coverage to Powers Steel for the full amount involved in Powers Steel's defense of the claims asserted against it in the *Walsh* Case without a reasonable basis under the Policy.

56.     Amerisure was or should have been aware that it lacked a reasonable basis to deny coverage under the Policy.

57.     Specifically, Amerisure denied coverage relating to the tortious interference claim asserted against Powers Steel on the grounds that the claim was not covered under the Policy, despite the clear allegations in the Amended Counterclaim demonstrating that the claim arose from an alleged "personal and advertising injury."

58.     Amerisure also failed to provide coverage for the full temporal period Powers Steel was entitled to, from the time it notified Amerisure of the claims alleged against it in July 2018 to the present. Amerisure did so despite being aware that Powers Steel notified Amerisure of the claims in July 2018 and that the claims against Powers Steel in the *Walsh* Case are ongoing,

59.     Finally, Amerisure failed to provide Powers Steel with the full amount of the attorneys' fees incurred by Powers Steel in its defense, despite the fact that the attorneys' fees were and are reasonable under the circumstances.

60.     Amerisure failed to deal with its insured fairly and in good faith by failing to properly investigate, evaluate, and process the claims against Powers Steel and/or by misconstruing or misinterpreting the factual circumstances which gave rise to the those claims, delaying consideration or investigation of Powers Steel's request for coverage, and failing to promptly respond to Powers Steel's inquiries and supplemental submissions and communications despite accepting substantial premiums paid by Powers Steel over the life of the Policy.

61.     Amerisure's actions were taken with an intent to injure Powers Steel and/or with a conscious and deliberate disregard for Powers Steel's rights.

62.     As a result of Amerisure's conduct, Powers Steel has suffered damages and losses greater than $75,000 in an amount to be proven at trial.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Powers Wire & Steel, Inc. respectfully requests that this Court issue an order:

1.     Declaring Powers Steel's rights with respect to the insurance policy issued by Amerisure;

2.     Order payment of compensatory damages in an amount to be proven at trial;

3.     Order payment of punitive damages;

4.     Order payment of Plaintiff's attorneys' fees and costs pursuant to Ariz. Rev. Stat. §12-341, among others; and

5.     Provide such other and further relief not specifically pled herein that is available at law or in equity, and any other relief the Court deems just and equitable. Plaintiff reserves the right to amend its prayer for relief and to seek alternative and/or additional relief as may become appropriate.

RESPECTFULLY SUBMITTED: July 17, 2020

THE QUINLAN LAW FIRM, LLC


By:     /s/ William J. Quinlan
        William J. Quinlan

        *Attorney for Plaintiff*